**TA LEGAL GROUP PLLC**
Taimur Alamgir, Esq.
Matthew J. Daidola, Esq.
205 E Main Street, STE 3-2
Huntington, NY 11743
(914) 552-2669
(631) 942-7399
tim@talegalgroup.com
matthew@talegalgroup.com
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SANTIAGO CANIZALES, BIJAN DAVID TABIBZADA, ILEANA DAGRIN, and ALISA PEPIC, *on behalf of themselves, FLSA Collective Plaintiffs, and Class Members,*<br><br>　　　　　　　　　　　*Plaintiffs*<br><br>- Against -<br><br>MARKETSHEER LLC, THE PENTHOUSE EXECUTIVE CLUB LLC, STEPPING OUT BALLROOM DANCE CORP., THE CHICK BISTRO, RACHEL LEE a/k/a QIUXUAN LI, KENNETH REESE, ANTIONE C. BELL, and HANNAH ARELLANO,<br><br>　　　　　　　　　　　*Defendants.* | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs, SANTIAGO CANIZALES, BIJAN DAVID TABIBZADA, ILEANA DAGRIN, and ALISA PEPIC ("Plaintiffs"), on behalf of themselves, the FLSA Collective Plaintiffs, and Rule 23 Class Members, by and through their undersigned counsel, hereby file this Class and Collective Action Complaint against Defendants MARKETSHEER LLC, THE PENTHOUSE EXECUTIVE CLUB LLC, STEPPING OUT BALLROOM DANCE CORP., THE

1

CHICK BISTRO, (collectively as "Corporate Defendants"), Defendants RACHEL LEE (a/k/a Qiuxuan Li), KENNETH REESE, ANTIONE C. BELL, and HANNAH ARELLANO, (collectively as "Individual Defendants"), (all named defendants collectively known as "Defendants"), and allege as follows:

## INTRODUCTION

1. Plaintiffs Santiago Canizales, Bijan David Tabibzada, Ileana Dagrin, and Alisa Pepic, former employees of Defendants, bring this action to redress a pervasive pattern of wage and hour violations, willful worker misclassification, tip misappropriation, and unlawful retaliation.

2. As dedicated coat check attendants, bartenders, and managers catering to Defendants' high-value clientele at "The Penthouse," Plaintiffs suffered systematic financial exploitation due to Defendants' egregious disregard for federal and state labor laws. Rather than compensating Plaintiffs for their hard work, Defendants engaged in a pattern of bad faith maneuvering, habitually delaying or completely withholding earned wages, illegally confiscating tips, and deliberately misclassifying employees as independent contractors to evade basic employer obligations.

3. When Plaintiffs dared to request their rightfully earned pay or question Defendants' unlawful practices, Defendants responded with swift and severe retaliation. Defendants systematically silenced their workforce, taking complaining employees off the schedule mid-week, baselessly claiming they were no longer a "culture fit," and deliberately locking them out of the company's Zoho timekeeping and CRM communication applications to destroy or conceal records of their complaints.

2

4. Defendants' conduct, characterized by ignored grievances, shifting excuses for delayed payroll, the hiring and exploitation of vulnerable labor, and retaliatory terminations, constituted an egregious violation of worker protection laws.

5. Furthermore, Plaintiffs assert wage and hour violations under the Fair Labor Standards Act ("FLSA") on behalf of a collective, and under the New York Labor Law ("NYLL") on behalf of a Rule 23 Class. Defendants engaged in a systemic wage theft scheme, requiring Plaintiffs and similarly situated workers to routinely work off-the-clock, attend unpaid training sessions, and participate in illegal tip-distribution arrangements where gratuities were withheld by accountants and management without transparency or compensation.

## CLAIMS

6. Plaintiffs seek recovery under the FLSA on behalf of themselves and FLSA Collective Plaintiffs from Defendants of the following: (1) unpaid minimum wage and overtime wages , (2) unlawfully retained and misappropriated tips, (3) liquidated damages, and (4) attorneys' fees and costs.

7. Plaintiffs further allege, pursuant to the anti-retaliation provisions of the FLSA and NYLL, that they are entitled to damages, including back wages, front wages, emotional distress damages, punitive damages, liquidated damages, pre-judgment interest of 9%, and attorneys' fees and costs, based on Defendants' retaliation, culminating in Plaintiffs' unlawful lockouts from communication platforms, removal from the schedule, and unlawful terminations.

8. Plaintiffs further allege, pursuant to the New York Labor Law ("NYLL") and Fed. R. Civ. P. 23, on behalf of themselves and Rule 23 Class Members, that they are entitled to recover damages from Defendants for: (1) unpaid minimum, regular, and overtime wages; (2) unpaid training time; (3) unlawfully retained and misappropriated tips, unlawful tip-sharing and tip-pooling practices, and failure to maintain legally required tip-distribution records; (4) statutory

3

penalties for Defendants' failure to provide proper wage notices (NYLL § 195(1)) and wage statements (NYLL § 195(3)); and (5) reasonable attorneys' fees and costs.

9.      Plaintiffs further allege, pursuant to the FLSA and NYLL, that Defendants willfully misclassified them and similarly situated employees as independent contractors to evade statutory obligations, and that they are entitled to declaratory relief, damages for unpaid wages resulting from this misclassification, liquidated damages, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

10.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 because Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, raise a federal question.

11.      This Court possesses supplemental jurisdiction over Plaintiffs' related state law claims under the New York Labor Law ("NYLL") pursuant to 28 U.S.C. § 1367(a), as the state law claims derive from a common nucleus of operative facts and are so closely related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

12.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including the performance of Plaintiffs' labor and Defendants' execution of the unlawful employment and payroll practices alleged herein.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13.      Plaintiffs bring their FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated current and former bartenders, coat-check attendants, service workers, hospitality workers, and other hourly and/or misclassified

workers employed by Defendants at "The Penthouse" and affiliated enterprise locations in New York at any time during the three (3) years preceding the filing of this Complaint through the date of final judgment who opt-in to this action (the "FLSA Collective Plaintiffs").

14.    Plaintiffs and the FLSA Collective Plaintiffs are similarly situated because they were subject to Defendants' common wage-and-hour policies and practices, including Defendants' policies and practices of misclassifying workers as independent contractors, requiring workers to sign W-9 forms, failing to pay all earned wages, failing to pay minimum wages and overtime compensation, failing to compensate mandatory training and other compensable work, confiscating and misappropriating tips, and retaliating against workers who complained about unpaid wages.

15.    Plaintiffs' claims are similar to the claims of the FLSA Collective Plaintiffs because Plaintiffs and the FLSA Collective Plaintiffs performed similar service, hospitality, nightlife, and event-related work for Defendants; were subject to common control, scheduling, supervision, payroll, timekeeping, and tip-distribution practices; and were harmed by the same unlawful enterprise-wide compensation policies.

16.    The FLSA Collective Plaintiffs are readily identifiable from Defendants' records, including payroll records, W-9 forms, onboarding documents, schedules, timekeeping records, Zoho records, CRM and messaging records, tip-distribution records, employee handbooks, and communications maintained by Defendants.

17.    Court-authorized notice is appropriate to inform similarly situated workers of their right to opt into this action. Notice should be distributed by first-class mail, email, text message, workplace posting, and any other reasonable means using the last known contact information maintained by Defendants.

18.    Plaintiffs therefore request that the Court conditionally certify this matter as an FLSA collective action, order Defendants to produce the names, last known mailing addresses, email addresses, telephone numbers, dates of employment, positions held, and other relevant identifying information for all FLSA Collective Plaintiffs, and authorize notice pursuant to 29 U.S.C. § 216(b).

## **RULE 23 CLASS ACTION ALLEGATIONS**

19.    Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of themselves and a Rule 23 Class consisting of:

    a.    All current and former bartenders, coat-check attendants, service workers, event workers, hospitality workers, and other non-managerial workers who were paid hourly and/or classified as independent contractors by Defendants at "The Penthouse" and affiliated enterprise locations in New York at any time during the six (6) years preceding the filing of this Complaint through the date of final judgment.

20.    Plaintiffs additionally bring their NYLL retaliation claims on behalf of a Retaliation Subclass consisting of:

    a.    All Class Members who were terminated, removed from schedules, locked out of digital systems, blocked from communications, or otherwise subjected to materially adverse employment actions after complaining about Defendants' unlawful wage practices.

21.    Excluded from the Class and Subclass are Defendants, Defendants' owners, officers, directors, managers, members, agents, legal representatives, successors and assigns, and any judicial officer assigned to this matter and their immediate family members.

6

22.    Throughout the relevant period, Plaintiffs and Class Members were subject to Defendants' common wage-and-hour policies and practices, including Defendants' policies and practices of misclassifying workers as independent contractors, failing to pay all earned wages, failing to pay minimum wages and overtime compensation, failing to compensate mandatory training and other compensable work, misappropriating tips, operating unlawful tip-pooling arrangements, failing to pay wages timely, and failing to provide legally compliant wage notices and wage statements.

23.    The Class and Retaliation Subclass are readily ascertainable. Class Members and Subclass Members may be identified through Defendants' records, including payroll records, W-9 forms, onboarding documents, schedules, timekeeping records, Zoho records, CRM and messaging records, tip-distribution records, employee handbooks, wage complaints, emails, text messages, termination records, schedule records, digital lockout records, and communications maintained by Defendants.

24.    **NUMEROSITY** The Class is so numerous that joinder of all members is impracticable. Upon information and belief, Defendants employed more than forty Class Members during the relevant period, and the precise number and identity of Class Members are within Defendants' possession, custody, or control.

25.    Upon information and belief, the Retaliation Subclass is also sufficiently numerous to warrant class treatment or may be certified as appropriate following discovery. The precise number and identity of Subclass Members are within Defendants' possession, custody, or control, including through records of wage complaints, schedule removals, digital lockouts, blocked communications, and terminations.

26.    **COMMONALITY** Common questions of law and fact exist as to Plaintiffs and Class Members, including but not limited to:

a.  Whether Defendants misclassified Plaintiffs and Class Members as independent contractors rather than employees;

b.  Whether Defendants operated as joint employers of Plaintiffs and Class Members;

c.  Whether Defendants failed to pay Plaintiffs and Class Members all wages owed;

d.  Whether Defendants failed to pay minimum wages and overtime compensation;

e.  Whether Defendants failed to pay spread-of-hours compensation as required by New York law;

f.  Whether Defendants failed to compensate mandatory training, pre-shift work, post-shift work, closing work, and other compensable time;

g.  Whether Defendants misappropriated tips, prevented tipped workers from tracking gratuities, or operated unlawful tip-pooling arrangements;

h.  Whether Defendants failed to timely pay wages in violation of NYLL § 191;

i.  Whether Defendants failed to provide wage notices required by NYLL § 195(1);

j.  Whether Defendants failed to provide wage statements required by NYLL § 195(3);

k.  Whether Defendants maintained a policy or practice of unlawfully retaliating against workers who demanded their lawful wages;

l.  Whether Defendants' violations were willful; and

m.  Whether Plaintiffs and Class Members are entitled to damages, liquidated damages, prejudgment interest, attorneys' fees, and costs.

27.  Common questions of law and fact also exist as to the Retaliation Subclass, including whether Defendants maintained a common policy or practice of responding to wage complaints by removing workers from schedules, locking workers out of Zoho or other company-controlled

digital systems, blocking communications, deleting wage-related messages, or terminating employment.

28. **TYPICALITY** Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and Class Members were subject to the same or substantially similar unlawful wage-and-hour policies and practices, and their claims arise from the same course of conduct and legal theories.

29. Plaintiffs' retaliation claims are typical of the Retaliation Subclass because Plaintiffs and Subclass Members complained about Defendants' unlawful wage practices and were subjected to materially adverse actions, including schedule removal, digital lockouts, blocked communications, deleted wage-related communications, and/or termination.

30. **ADEQUACY** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests antagonistic to the Class, and Plaintiffs are represented by counsel experienced in wage-and-hour litigation, employment litigation, and class actions.

31. Plaintiffs will also fairly and adequately protect the interests of the Retaliation Subclass. Plaintiffs have no interests antagonistic to the Subclass and seek to remedy the same retaliatory policies and practices that harmed Subclass Members.

32. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

33. **PREDOMINANCE** Common questions of law and fact predominate over any individualized questions because Plaintiffs' and Class Members' claims arise from Defendants' common policies, practices, payroll systems, misclassification scheme, wage-payment practices, tip-distribution practices, and uniform failure to provide compliant wage notices and wage statements.

9

34.     With respect to the Retaliation Subclass, common questions predominate as to Defendants' uniform practice of responding to wage complaints with adverse actions, including schedule removal, lockouts from company-controlled digital systems, blocked communications, deletion of wage-related messages, and termination.

35.     **SUPERIORITY** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Many Class Members and Subclass Members may lack the financial resources or incentive to pursue individual claims, and class treatment will promote efficiency, consistency, and judicial economy by resolving common issues in a single proceeding.

36.     Notice can be provided to Class Members and Subclass Members by first-class mail, email, text message, posting at Defendants' worksites and digital platforms, and any other means permitted by the Court using contact information maintained in Defendants' records.

## PARTIES

### Plaintiffs

37.     **Plaintiff Bijan Tabibzada** ("Tabibzada") is an adult individual and a resident of Suffolk County, New York. During the relevant period, Tabibzada was employed by Defendants as a bartender and service worker at Defendants' nightlife and hospitality venues, including "The Penthouse," from approximately June 2025 until his retaliatory termination in or around December 2025.

38.     At all times relevant to this Complaint, Plaintiff Tabibzada was an "employee" of Defendants within the meaning of FLSA § 203(e) and NYLL §§ 190(2) and 651(5), and a "manual worker" within the meaning of NYLL § 190(4). Plaintiff Tabibzada brings this action on behalf of himself and all other similarly situated workers.

39.    **Plaintiff Santiago Canizales** ("Canizales") is an adult individual and a resident of Queens County, New York. During the relevant period, Canizales was employed by Defendants as a bartender and service worker at Defendants' nightlife and hospitality venues from approximately August 2025 until his retaliatory termination in or around December 2025.

40.    At all times relevant to this Complaint, Plaintiff Canizales was an "employee" of Defendants within the meaning of FLSA § 203(e) and NYLL §§ 190(2) and 651(5), and a "manual worker" within the meaning of NYLL § 190(4). Plaintiff Canizales brings this action on behalf of himself and all other similarly situated workers.

41.    **Plaintiff Ileana Dagrin** ("Dagrin") is an adult individual and a resident of Queens County, New York. During the relevant period, Dagrin was employed by Defendants as a bartender and service worker at Defendants' nightlife and hospitality venues, including "The Penthouse," from approximately May 2025 until her retaliatory termination in or around December 2025.

42.    At all times relevant to this Complaint, Plaintiff Dagrin was an "employee" of Defendants within the meaning of FLSA § 203(e) and NYLL §§ 190(2) and 651(5), and a "manual worker" within the meaning of NYLL § 190(4). Plaintiff Dagrin brings this action on behalf of herself and all other similarly situated workers.

43.    **Plaintiff Alisa Pepic** ("Pepic") is an adult individual and a resident of Bronx County, New York. During the relevant period, Pepic was employed by Defendants as a coatcheck and service worker at Defendants' nightlife and hospitality venues, including "The Penthouse," from approximately May 2025 until her retaliatory termination in or around December 2025

44.    At all times relevant to this Complaint, Plaintiff Pepic was an "employee" of Defendants within the meaning of FLSA § 203(e) and NYLL §§ 190(2) and 651(5), and a "manual

worker" within the meaning of NYLL § 190(4). Plaintiff Pepic brings this action on behalf of herself and all other similarly situated workers.

45.    Throughout their employment, Plaintiffs were subject to Defendants' unlawful enterprise-wide scheme, wherein Defendants deliberately misclassified them as "independent contractors," subjected them to mandatory but uncompensated training shifts, misappropriated their tips, unlawfully delayed the payment of their earned wages, and ultimately retaliated against them for engaging in protected activity.

46.    The work performed by Plaintiffs was essential and integral to Defendants' business operations. Plaintiffs did not exercise independent managerial discretion, did not possess a meaningful opportunity for profit or loss, and were completely economically dependent upon Defendants' enterprise.

## Defendants

47.    **Defendant The Penthouse Executive Club LLC** ("The Penthouse") is a domestic limited liability company organized and existing under the laws of the State of New York, with a principal place of business located in New York at 617 W 45th St, New York, NY 10036. The Penthouse jointly operated, managed, and/or owned the nightlife, hospitality, and event enterprise where Plaintiffs were employed.

48.    **Defendant Marketsheer LLC** ("Marketsheer") is a domestic limited liability company organized and existing under the laws of the State of New York, with a principal place of business located in New York at 617 W 46th St, 6th Floor, New York, NY 10036. Marketsheer jointly operated, managed, and/or owned the nightlife, hospitality, and event enterprise where Plaintiffs were employed.

49.    **Defendant Stepping Out Ballroom Dance Corp.** ("Stepping Out") is a domestic business corporation organized and existing under the laws of the State of New York, with a

principal place of business located in New York at 617 W 46th St, PH Floor, New York, NY 10036. Stepping Out jointly operated, managed, and/or owned the nightlife, hospitality, and event enterprise where Plaintiffs were employed.

50.    **Defendant The Chick Bistro** is a corporate entity, trade name, and/or "doing business as" (d/b/a) designation utilized by Defendants to operate a specific hospitality venue where Plaintiffs performed their labor. Located at 938 E 233rd St, Bronx, NY 10466. (Marketsheer, The Penthouse, Stepping Out, and The Chick Bistro are hereinafter collectively referred to as the "Corporate Defendants").

51.    **Defendant Rachel Lee**, also known as Qiuxuan Li ("Lee"), is, upon information and belief, an owner, officer, director, managing member, and/or Chief Executive Officer of the Corporate Defendants.

52.    **Defendant Kenneth Reese** ("Reese") is, upon information and belief, an owner, officer, director, and/or senior executive of the Corporate Defendants.

53.    **Defendant Antione C. Bell** ("Bell") is, upon information and belief, an owner, officer, director, and/or senior executive of the Corporate Defendants.

54.    **Defendant Hannah Arellano** ("Arellano") is, upon information and belief, an owner, officer, director, and/or senior management executive of the Corporate Defendants. (Lee, Reese, Bell, and Arellano are hereinafter collectively referred to as the "Individual Defendants").

## JOINT EMPLOYER AND SINGLE INTEGRATED ENTERPRISE ALLEGATIONS

55.    At all relevant times, the Corporate Defendants and the Individual Defendants (collectively, "Defendants") operated as joint employers of Plaintiffs, the FLSA Collective Plaintiffs, and the Rule 23 Class Members within the meaning of the FLSA and NYLL.

13

56. As a matter of economic reality, Defendants directly and indirectly exercised operational and economic control over Plaintiffs' employment. Defendants controlled the terms and conditions of Plaintiffs' work, including hiring, firing, scheduling, supervision, discipline, payroll, tip distribution, timekeeping, employee communications, and access to workplace systems.

57. The Corporate Defendants operated as an integrated wage-and-hour enterprise with respect to their nightlife, hospitality, and event operations. The Corporate Defendants shared common ownership, common management, common financial control, and interrelated daily operations. They utilized centralized payroll systems, common accounting practices for tip distribution, shared digital management platforms including Zoho, common workplace rules and human resources policies, and shared employees across the various enterprise entities and locations.

58. The Corporate Defendants were operated in a manner that obscured formal distinctions between entities, commingled labor operations and payroll practices, and allowed the Corporate Defendants and Individual Defendants to jointly benefit from the wage-and-hour violations alleged herein.

59. At all relevant times, the Individual Defendants possessed and exercised operational and economic control over the enterprise and over the employment of Plaintiffs, the FLSA Collective Plaintiffs, and Rule 23 Class Members.

60. Specifically, the Individual Defendants possessed and exercised the power to: (a) hire and fire employees, including through retaliatory terminations and removals from schedules; (b) supervise and control employee work schedules and conditions of employment, including by controlling access to the Zoho platform and other workplace systems; (c) determine the rate and method of payment, including by withholding wages, dictating tip-sharing percentages, and

14

controlling gratuity distributions; and (d) maintain and control employment records, including payroll, timekeeping, scheduling, and workplace communications.

61.     The Individual Defendants exercised direct operational control over the wage-and-hour practices challenged in this action and personally participated in the misclassification, wage withholding, tip misappropriation, record manipulation, and retaliation alleged herein.

62.     Accordingly, Defendants are jointly and severally liable as employers under the broad, remedial definitions of the FLSA and NYLL. See *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003); *Irizarry v. Catsimatidis*, 722 F.3d 99, 110–17 (2d Cir. 2013).

## **CONDITIONS PRECEDENT TO SUIT**

63.     This Court has personal jurisdiction over the Defendants in that the Corporate Defendants are incorporated or organized in the State of New York and maintain corporate headquarters and primary places of business in the State of New York. Furthermore, the Individual Defendants are domiciled in the State of New York, conduct substantial business within this District, and/or are subject to personal jurisdiction under N.Y. C.P.L.R. § 302, New York's long-arm statute.

64.     Defendants engage in an enterprise whose annual gross volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that employees of Defendants handle, sell, and provide services, alcohol, and goods produced outside of New York that have moved in interstate commerce. Defendants, as employers of such a business, are therefore subject to the jurisdiction of the FLSA.

65.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, 29 U.S.C. § 203(r) and (s), the NYLL, and the supporting regulations thereunder.

66.    At all relevant times, the work performed by Plaintiffs, the FLSA Collective Plaintiffs, and the Rule 23 Class Members was directly essential to the daily operations and overall business operated by Defendants.

67.    Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived by Defendants.

## STATEMENT OF FACTS

### Defendants' Single Integrated Enterprise and Systemic Wage Abuses

68.    At all relevant times, Defendants operated a nightlife, hospitality, and event enterprise, primarily functioning under the moniker "The Penthouse", utilizing a web of corporate shells including Marketsheer LLC, The Chick Bistro, and Stepping Out Ballroom Dance Corp.

69.    Regardless of the specific corporate entity named on their employee handbooks or illusory independent contractor agreements, Plaintiffs and Class Members were jointly managed, scheduled, and supervised by the Individual Defendants, who unilaterally controlled the enterprise's labor policies.

70.    Defendants engaged in a willful, systemic, and enterprise-wide scheme to defraud their service employees of their rightfully earned wages. To circumvent the strictures of the FLSA and NYLL, Defendants routinely and deliberately misclassified their hourly bartenders, coat check attendants, and service staff as "independent contractors," forcing them to sign W-9 forms as a condition of employment.

71.    Despite this fraudulent classification, Defendants exercised absolute control over the means and methods of Plaintiffs' work, strictly dictating their schedules, imposing employee handbooks, mandating their duties, and disciplining them for minor infractions.

72.    Defendants further executed a systemic tip misappropriation scheme. Bartenders and other tipped workers were strictly prohibited from handling, counting, or tracking their own

nightly gratuities. Instead, Defendants confiscated all tips, funneling them through an "accountant" and management, who distributed the funds at their own discretion and without any transparency, in blatant violation of state and federal law.

73. Defendants habitually failed to meet their payroll obligations. It was Defendants' standard operating procedure to delay wages for weeks or months at a time, or to simply refuse to pay employees for entire pay periods.

74. To conceal these violations, Defendants maintained complete control over the "Zoho" timekeeping and communication applications used by the enterprise. When employees demanded their owed wages, Defendants systematically retaliated by locking them out of the applications, deleting historical communications, and fabricating excuses such as "app maintenance" to obscure their deliberate destruction of payroll and communication records.

**Plaintiff Bijan David Tabibzada**

75. Plaintiff Bijan David Tabibzada was employed by Defendants as a bartender at The Penthouse for approximately six months.

76. Throughout his employment, Defendants paid Plaintiff Tabibzada a purported hourly rate of $12.50 per hour, plus tips. However, Defendants consistently paid his direct deposit wages late, or completely failed to pay him for weeks of labor.

77. Plaintiff Tabibzada was subjected to Defendants' unlawful tip-pooling scheme. He was required to share his tips with "bottle girls" and bussers based on arbitrary percentages dictated by management. He was forbidden from handling or tracking his own tips, which were opaque and managed entirely by Defendants' accountant.

78. Plaintiff Tabibzada was a victim of Defendants' deliberate misclassification scheme, treated on paper as an independent contractor despite functioning entirely as a tightly controlled employee.

79.     Defendants routinely manipulated Plaintiff Tabibzada's time records. The pay stubs available to him in the Zoho application were rarely updated, with his last visible stub dated in August despite working months thereafter.

80.     Plaintiff Tabibzada routinely worked between forty-five (45) and fifty (50) hours per workweek. Despite this, Defendants willfully failed to pay him the statutorily required overtime compensation for hours worked in excess of forty (40).

81.     Defendants' management was fully aware of these overtime hours, frequently directing Plaintiff Tabibzada to remain at work performing compensable duties past the scheduled end of his shifts. Furthermore, Plaintiff's allegations regarding his extensive hours and uncompensated work can be independently verified by the enterprise's security cameras and video recording systems. Plaintiff personally observed other employees be subject to the same overtime pattern and practice.

82.     Towards the end of his employment, Defendants owed Plaintiff Tabibzada for over a month's worth of unpaid labor. He demanded his earned wages no less than twenty-five (25) separate times.

83.     In blatant retaliation for his inquiries regarding his pay, and following a shift where he cleaned the bar fifteen minutes early after agreeing to stay late, Defendants abruptly removed Plaintiff Tabibzada from the schedule. Approximately one to two months prior to his ultimate termination, Defendants intentionally disabled his access to the Zoho app, explicitly telling him they would "track his hours for him" to prevent him from maintaining his own records.

**Plaintiff Santiago Canizales**

84.     Plaintiff Santiago Canizales was employed by Defendants as a coat check attendant beginning on or about September 16. On his first day, Defendants required him to attend a

mandatory training shift. In accordance with Defendants' systemic policy of wage theft, this training shift was entirely unpaid.

85.     Plaintiff Canizales began earning an hourly rate of $14.00 per hour on his second day, but he did not receive his first paycheck until over a month after his start date. Like his co-workers, he was forced to sign a W-9 form to facilitate Defendants' misclassification scheme.

86.     On or about November 7, Defendant Hannah Arellano promoted Plaintiff Canizales to a manager position for certain staff within the organization. His promised pay rate was increased to $16.00 per hour, and he was explicitly promised 1% of the bar tips. Defendants never paid him this promised 1% tip share.

87.     In his managerial role, Plaintiff Canizales witnessed firsthand the enterprise-wide scope of Defendants' wage violations, as numerous employees continually contacted him complaining that they had not been paid.

88.     Throughout his employment, Plaintiff Canizales routinely worked between forty-five (45) and fifty (50) hours per workweek, particularly after assuming his demanding managerial duties. Despite this, Defendants willfully failed to pay him the statutorily required overtime compensation for hours worked in excess of forty (40).

89.     Defendants' management possessed actual knowledge of these overtime hours, as they directly scheduled his extended shifts and explicitly directed him to remain on-site to oversee staff and operations. Furthermore, Plaintiff's allegations regarding his extensive hours and uncompensated overtime can be independently verified by his meticulously maintained personal records, Defendants' digital communications, and the enterprise's security cameras. Plaintiff personally observed other employees be subject to the same overtime pattern and practice.

90.     Plaintiff Canizales diligently tracked his own time and wages. In total, Defendants paid him approximately $2,200.00, but unlawfully withheld over $3,000.00 in earned wages. His last received payment was on November 24.

91.     When Plaintiff Canizales sent management a screenshot documenting the exact amount of wages he was owed and demanding payment by a specific deadline, Defendants immediately retaliated. Defendant Arellano kicked him off the company's texting/CRM application, falsely claiming it was due to "app maintenance."

92.     Following this lockout, Plaintiff Canizales discovered that the screenshot conversation, along with numerous other communications documenting his employment and wage demands, had been deliberately deleted from the system by Defendants.

93.     On December 16, 2025, Defendant Arellano sent a mass text claiming the business was closed for "winter break" and that management was "working to secure pay." When Plaintiff Canizales subsequently followed Defendant Arellano's instructions to email the finance team for his owed wages, his emails bounced back, revealing Defendants had maliciously blocked his email address. Subsequent phone calls to Defendant Arellano were repeatedly hung up on.

**Class-Wide Retaliation and Continuing Violations**

94.     The experiences of Plaintiffs Tabibzada and Canizales were not isolated incidents, but rather the standard operating procedure of Defendants' enterprise.

95.     Plaintiffs Ileana Dagrin, Alisa Pepic, and other similarly situated workers (including a co-worker named Jazmine who accompanied Plaintiff Tabibzada to demand pay from the CEO) were subjected to the identical illegal practices. They suffered through the same independent contractor misclassification, the same opaque and illegal tip confiscation, and the same chronic failure to pay minimum and overtime wages.

96. Defendants systematically utilized removal from the weekly schedule and digital lockouts from corporate platforms as weapons to silence, intimidate, and ultimately terminate any worker who had the audacity to ask for their lawfully earned wages.

97. Plaintiffs retained TA Legal Group PLLC as counsel to represent them, the FLSA Collective Plaintiffs, and the Rule 23 Class Members in this litigation, and have agreed to pay the firm a reasonable fee for its services.

## CAUSES OF ACTION

### COUNT I – FAIR LABOR STANDARDS ACT - MINIMUM WAGE AND OVERTIME VIOLATIONS
*(On Behalf of Plaintiffs and the FLSA Collective Plaintiffs against All Defendants)*

98. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

99. At all relevant times, Plaintiffs and the FLSA Collective Plaintiffs were "employees" of Defendants, and Defendants were "employers" of Plaintiffs and the FLSA Collective Plaintiffs, within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203(e), (d).

100. At all relevant times, Defendants were joint employers of Plaintiffs and the FLSA Collective Plaintiffs because they exercised operational and economic control over Plaintiffs' employment, including the power to hire and fire, supervise and control work schedules and conditions of employment, determine rates and methods of payment, and maintain or control employment records. See *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003).

101. At all relevant times, Defendants constituted an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A). Upon information and belief, Defendants' enterprise had an annual gross volume of sales made or business done of not less than $500,000, and Plaintiffs and other employees handled goods,

21

equipment, alcohol, food, supplies, uniforms, point-of-sale systems, and other materials that moved in interstate commerce.

102.   Defendants deliberately and willfully engaged in a scheme to misclassify Plaintiffs and the FLSA Collective Plaintiffs as "independent contractors." However, as a matter of economic reality, Plaintiffs were employees because they were economically dependent upon Defendants' business, did not exercise independent managerial discretion, did not possess a meaningful opportunity for profit or loss, made no meaningful capital investment, did not operate independent businesses, and performed duties integral to Defendants' nightlife, hospitality, and event operations. S*ee Brock v. Superior Care*, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988) (applying economic reality factors to find health care workers were employees, not independent contractors); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 911–12, 924–28 (S.D.N.Y. 2013) (applying same factors to find nightclub entertainers, despite signed independent contractor agreements, were employees as a matter of economic reality).

103.   Pursuant to 29 U.S.C. § 206, Defendants were required to pay Plaintiffs and the FLSA Collective Plaintiffs at least the applicable federal minimum wage for all hours worked.

104.   Pursuant to 29 U.S.C. § 207(a)(1), Defendants were required to pay Plaintiffs and the FLSA Collective Plaintiffs overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a single workweek.

105.   Defendants violated the FLSA by causing and permitting Plaintiffs and the FLSA Collective Plaintiffs to work without proper compensation. Specifically, Defendants required Plaintiffs and similarly situated workers to perform compensable work, including mandatory training shifts that were required, controlled by Defendants, and performed primarily for Defendants' benefit; scheduled service work; pre-shift duties; post-shift closing duties;

managerial tasks; and other work performed for Defendants' benefit, while failing to pay for all hours worked.

106.   Defendants further failed to pay the required overtime premium for workweeks in which Plaintiffs and similarly situated workers worked more than forty hours. Plaintiffs and the FLSA Collective Plaintiffs regularly worked multiple late-night service shifts per week, including time spent performing pre-shift setup, post-shift closing duties, mandatory training, managerial tasks, and other compensable work, causing them to work more than forty hours in one or more workweeks without receiving overtime compensation at one and one-half times their regular rate.

107.   During their employment, Plaintiffs personally observed other similarly situated employees working in excess of forty hours per workweek and similarly failing to receive their statutorily required overtime compensation.

108. Defendants    possessed    actual    or    constructive    knowledge    of    Plaintiffs' uncompensated work, including through their direct scheduling and supervision of Plaintiffs, their control over Zoho timekeeping and communication systems, their control over payroll records, and Plaintiffs' repeated wage demands by application and text message. An employer may be liable under the FLSA where it causes or permits uncompensated off-the-clock work while having actual or constructive knowledge of such work. See *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361–65 (2d Cir. 2011).

109.   To the extent Defendants contend that they were entitled to take any tip credit against the federal minimum wage, such tip credit was invalid. Defendants failed to provide the requisite statutory notice required by 29 U.S.C. § 203(m)(2)(A), misappropriated and retained employee tips in violation of 29 U.S.C. § 203(m)(2)(B), and required an unlawful tip pool that included managers, employer agents, non-service employees, and/or other ineligible participants.

23

110. Defendants' failure to pay Plaintiffs and the FLSA Collective Plaintiffs the mandated minimum wage and overtime compensation was willful, knowing, and intentional, thereby extending the applicable limitations period to three years pursuant to 29 U.S.C. § 255(a). Defendants knew or should have known that Plaintiffs were employees entitled to minimum wages and overtime compensation, yet deliberately misclassified them, withheld wages, failed to pay for all compensable time, failed to pay overtime premiums, and obstructed Plaintiffs' ability to verify their hours and wages.

111. Defendants also failed to make, keep, and preserve accurate records of the hours worked by Plaintiffs and the FLSA Collective Plaintiffs, as required by 29 U.S.C. § 211(c). Instead, Defendants controlled, withheld, manipulated, deleted, or disabled access to payroll and communication records, including records maintained through Zoho and related systems, to obscure the full extent of their wage-and-hour violations.

112. As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiffs and the FLSA Collective Plaintiffs suffered financial damages. Accordingly, Plaintiffs and the FLSA Collective Plaintiffs are entitled to recover unpaid minimum wages, unpaid overtime wages, liquidated damages in an amount equal to their unpaid minimum and overtime wages, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II – NEW YORK LABOR LAW - MINIMUM WAGE, OVERTIME, AND SPREAD-OF-HOURS VIOLATIONS
### (On Behalf of Plaintiffs and the Rule 23 Class Against All Defendants)

113. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

114. At all relevant times, Plaintiffs and the Rule 23 Class Members were "employees," and Defendants were "employers," within the meaning of NYLL §§ 651(5) and 651(6). Defendants were required to comply with NYLL Article 19, including NYLL § 652, and the

24

applicable New York State Department of Labor regulations, including the Hospitality Industry Wage Order, 12 N.Y.C.R.R. Part 146.

115.   At all relevant times, Defendants operated hospitality establishments and/or hospitality-related event services, including nightlife, bar, coat-check, service, and event operations, within the meaning of 12 N.Y.C.R.R. Part 146.

116.   At all relevant times, Defendants were joint employers of Plaintiffs and the Rule 23 Class Members because they exercised operational and economic control over Plaintiffs' employment, including by controlling hiring, firing, scheduling, supervision, discipline, rates and methods of pay, timekeeping, and payroll records. See *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013).

117.   Defendants deliberately and willfully engaged in a scheme to misclassify Plaintiffs and the Rule 23 Class Members as "independent contractors" to evade their statutory obligations under the NYLL. However, under New York law, the critical inquiry is the degree of control exercised by the purported employer over the results produced or the means used to achieve the results. Because Defendants strictly dictated schedules, mandated duties, controlled workplace rules, supervised performance, controlled payroll systems, and managed all aspects of the nightlife and hospitality operations, Plaintiffs and the Rule 23 Class Members were employees, not independent contractors, under the NYLL. See *Matter of Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003).

118.   Pursuant to NYLL § 652 and 12 N.Y.C.R.R. § 146-1.2, Defendants were required to pay Plaintiffs and the Rule 23 Class Members at least the applicable New York minimum wage for all hours worked.

119.    Pursuant to 12 N.Y.C.R.R. § 146-1.4, Defendants were required to pay Plaintiffs and the Rule 23 Class Members overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) in a single workweek.

120.    Pursuant to 12 N.Y.C.R.R. § 146-1.6, Defendants were required to pay Plaintiffs and the Rule 23 Class Members one additional hour of pay at the basic minimum hourly rate for each day in which the interval between the beginning and end of the workday exceeded ten (10) hours.

121.    Defendants violated the NYLL by causing and permitting Plaintiffs and the Rule 23 Class Members to work without proper compensation. Specifically, Defendants required Plaintiffs to perform compensable work, including mandatory unpaid training shifts, late-night service shifts, pre-shift duties, post-shift closing duties, managerial tasks, and other work performed for Defendants' benefit, while delaying, withholding, or refusing to pay wages for this labor.

122.    Defendants further failed to pay the required overtime premium for workweeks in which Plaintiffs and Rule 23 Class Members worked more than forty hours. Defendants' timekeeping, payroll, and communication practices, including their control over Zoho and related systems, prevented employees from accurately accessing, verifying, or preserving records of their hours and wages.

123.    Defendants also failed to pay spread-of-hours compensation. Plaintiffs and Rule 23 Class Members routinely worked days in which the interval between the beginning and end of the workday exceeded ten hours, including time spent performing pre-shift preparation, late-night service shifts, and post-shift closing duties, yet Defendants failed to pay one additional hour at the applicable minimum wage rate as required by 12 N.Y.C.R.R. § 146-1.6.

124.    To the extent Defendants contend that they were entitled to take any tip credit against the minimum wage, such tip credit was invalid because Defendants failed to satisfy the notice and

recordkeeping requirements for a tip credit, failed to permit employees to retain gratuities except as permitted by law, and misappropriated and/or retained employee tips. See 12 N.Y.C.R.R. § 146-1.3; NYLL § 196-d.

125.    Defendants' failure to pay Plaintiffs and the Rule 23 Class Members the statutorily mandated minimum wage, overtime compensation, and spread-of-hours compensation was willful, knowing, and intentional, and formed part of an enterprise-wide practice to minimize labor costs at the expense of their workforce.

126.    Accordingly, Plaintiffs and the Rule 23 Class Members are entitled to recover unpaid minimum wages, unpaid overtime wages, unpaid spread-of-hours premiums, liquidated damages equal to 100% of the total amount of wages found to be due, pre-judgment interest, and reasonable attorneys' fees and costs pursuant to NYLL § 663(1), and all other applicable provisions of the NYLL.

**COUNT III – NEW YORK LABOR LAW - TIP MISAPPROPRIATION AND ILLEGAL TIP POOLING**
*(On Behalf of Plaintiffs and the Rule 23 Class Against All Defendants)*

127.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

128.    At all relevant times, Plaintiffs and the Rule 23 Class Members were "employees," and Defendants were "employers," employer agents, officers or agents of corporate employers, and/or persons prohibited from retaining employee gratuities within the meaning of NYLL §§ 190, 196-d, and the supporting New York State Department of Labor regulations, including the Hospitality Industry Wage Order, 12 N.Y.C.R.R. Part 146.

129.    NYLL § 196-d prohibits an employer, its agent, an officer or agent of any corporation, or any other person from demanding, accepting, or retaining, directly or indirectly, any part of the gratuities received by an employee, or any part of a charge purported to be a gratuity for an employee.

27

130.    In the hospitality industry, tip sharing and tip pooling are governed by NYLL § 196-d and 12 N.Y.C.R.R. §§ 146-2.14, 146-2.15, 146-2.16, and 146-2.17. Those provisions define tip sharing and tip pooling, limit lawful participation to eligible service employees and food service workers who participated in providing service to customers, and require employers operating tip-sharing or tip-pooling systems to establish, maintain, and preserve detailed records of gratuities collected and distributed.

131.    Defendants deliberately and willfully violated NYLL § 196-d and the Hospitality Industry Wage Order by implementing a mandatory, unlawful tip-retention, tip-sharing, and/or tip-pooling scheme across their enterprise.

132.    Specifically, Defendants strictly prohibited Plaintiffs and other tipped service workers, including bartenders and other customer-facing hospitality workers, from handling, counting, verifying, or tracking their own cash and credit-card tips at the end of their shifts. Instead, Defendants required all gratuities to be surrendered to Defendants, their managers, employer agents, corporate agents, and/or an enterprise accountant operating on Defendants' behalf.

133.    Defendants and their agents unlawfully retained portions of these gratuities for themselves and/or distributed them at their arbitrary discretion. To the extent Defendants contend that they operated a lawful tip-sharing or tip-pooling arrangement, that contention is false because Defendants required Plaintiffs and other tipped workers to surrender gratuities to management, employer agents, corporate agents, and/or an enterprise accountant; prevented workers from tracking or verifying their gratuities; retained portions of gratuities; distributed tips according to management-dictated percentages; and failed to ensure that distributions were limited to eligible service employees or food service workers who participated in customer service.

134.    Defendants' tip practices were unlawful because, among other reasons, Defendants retained employee gratuities; permitted managers, employer agents, corporate agents, non-service

28

employees, employees with meaningful authority over other workers, and/or other ineligible participants to receive or control gratuities; failed to operate a transparent and legally compliant tip-sharing or tip-pooling system; and failed to maintain legally required tip-distribution records.

135.    New York law prohibits employer agents and employees with meaningful or significant authority over subordinates from retaining tips or participating in tip pools. *See Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 473 (2013). Courts applying NYLL § 196-d have likewise recognized liability where owners, managers, or employer agents unlawfully retain gratuities or participate in unlawful tip-distribution schemes. *See Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 107 (S.D.N.Y. 2020).

136.    Defendants further violated 12 N.Y.C.R.R. § 146-2.17 by failing to establish, maintain, and preserve required tip-sharing and tip-pooling records, including daily logs of tips collected, the occupations deemed eligible to receive tip distributions, the shares or percentages assigned to each occupation, and the amounts distributed to each participant.

137.    By confiscating Plaintiffs' tips, preventing Plaintiffs from independently tracking their earned gratuities, funneling gratuities through managers, employer agents, corporate agents, and/or an enterprise accountant, failing to maintain legally compliant tip records, and dictating unlawful distributions, Defendants retained, misappropriated, diverted, and failed to pay gratuities belonging to Plaintiffs and the Rule 23 Class Members.

138.    Defendants' misappropriation, retention, diversion, and unlawful distribution of Plaintiffs' tips were willful, knowing, and intentional, and formed part of an enterprise-wide practice to exploit their workforce and artificially reduce labor costs.

139.    Defendants willfully violated NYLL § 196-d and the Hospitality Industry Wage Order by retaining, diverting, misappropriating, and unlawfully distributing gratuities belonging to Plaintiffs and the Rule 23 Class Members. Accordingly, Plaintiffs and the Rule 23 Class Members

29

are entitled to recover their unlawfully retained, diverted, and misappropriated tips, liquidated damages equal to 100% of the gratuities found to be due, prejudgment interest, reasonable attorneys' fees and costs pursuant to NYLL § 198(1-a), and all other relief available under the NYLL.

**COUNT IV – NEW YORK LABOR LAW - FAILURE TO PAY TIMELY WAGES**
*(On Behalf of Plaintiffs and the Rule 23 Class Against All Defendants)*

140.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

141.    At all relevant times, Plaintiffs and the Rule 23 Class Members were "employees," and Defendants were "employers," within the meaning of NYLL §§ 190(2), 190(3), 191, and 198.

142.    At all relevant times, Plaintiffs and many Rule 23 Class Members were "manual workers" within the meaning of NYLL § 190(4), because they spent more than twenty-five percent (25%) of their working time performing physical labor, including standing, walking, carrying items, stocking bars, setting up and breaking down service areas, cleaning, organizing, handling coats and customer property, and performing other physical tasks integral to Defendants' nightlife, hospitality, and event operations.

143.    As manual workers, Plaintiffs and similarly situated Rule 23 Class Members were required to be paid weekly and not later than seven calendar days after the end of the week in which their wages were earned pursuant to NYLL § 191(1)(a). In the alternative, to the extent any Plaintiffs or Rule 23 Class Members are deemed "clerical and other workers," Defendants were required to pay them no less frequently than semi-monthly on regular paydays designated in advance pursuant to NYLL § 191(1)(d).

144.    Defendants violated NYLL § 191 and Article 6 of the NYLL by failing to pay Plaintiffs and the Rule 23 Class Members their earned wages on the statutorily required payday. Defendants' violations were not occasional or isolated lapses in an otherwise compliant payroll schedule. Rather, Defendants routinely and repeatedly delayed payroll for weeks or months at a time,

failed to pay wages on any regular, designated payday, and in many instances failed to pay wages at all for compensable work already performed, including entire pay periods of unpaid labor.

145. By way of example, Defendants paid Plaintiff Tabibzada late or not at all on a recurring basis throughout his approximately six months of employment, and at the time of his termination owed him for over a month of unpaid labor. Defendants did not pay Plaintiff Canizales his first wages until over a month after his start date, paid him only intermittently thereafter, and ultimately withheld over $3,000.00 in wages he had personally tracked and documented.

146. Defendants' failure to pay wages on a regular, designated payday was neither a first-time nor an isolated occurrence with respect to any individual Plaintiff or Class Member. Defendants' practice of withholding, delaying, and failing to pay wages on any consistent schedule recurred throughout each Plaintiff's employment and across the putative Class, constituting repeated and continuing violations of NYLL § 191 as to the same employees, rather than a single technical or first-time lapse. Defendants did not pay Plaintiffs or Class Members on a regular payday designated in advance, whether weekly, semi-monthly, or otherwise, at any point material to this Complaint.

147. Defendants' violations were not limited to a technical pay-frequency violation. Defendants failed to issue wages for certain pay periods, training shifts, service shifts, closing work, managerial work, overtime work, and other compensable labor. Those unpaid and withheld wages constitute independent wage underpayments recoverable under NYLL Article 6 and other applicable provisions of the NYLL, separate and apart from any liquidated damages available for the untimeliness of payment itself.

148. Defendants' violations were willful, calculated, and devoid of any good-faith basis. When Plaintiffs complained about late and unpaid wages, including Plaintiff Tabibzada demanding his wages more than twenty-five times and Plaintiff Canizales submitting written demands documenting the wages owed, Defendants responded with evasion, false promises of future pay

31

dates, lockouts from company-controlled applications, deletion of communications, blocked emails, and other retaliatory conduct. Defendants' shifting and pretextual excuses for delayed and withheld payroll, including blaming "app maintenance" and a purported "winter break," demonstrate that Defendants had no good-faith basis for believing their underpayment and untimely payment of wages complied with the law.

149.    NYLL § 198(1-a) provides civil remedies for wage claims arising under Article 6, including recovery of wage underpayments, prejudgment interest, reasonable attorneys' fees and costs, and liquidated damages where available. Manual workers may assert claims under NYLL §§ 191 and 198 for untimely wage payments. See NYLL §§ 191(1)(a), 198(1-a); *Vega v. CM & Assocs. Constr. Mgt., LLC*, 175 A.D.3d 1144, 1146-47 (1st Dep't 2019) (holding that an underpayment occurs the moment an employer fails to pay wages in compliance with § 191(1)(a), and that § 198(1-a) provides a private right of action for such underpayments).

150.    To the extent Defendants contend that any 2025 amendments to NYLL §§ 191 and 198 limit the liquidated damages otherwise available for late payment of wages to manual workers, any such limitation does not apply here because Defendants' violations were repeated, willful, and not confined to a single, isolated instance of late payment by an employer that otherwise paid wages on a regular schedule no less frequently than semi-monthly. Defendants did not pay Plaintiffs or Class Members on any regular, designated payday on a continuing and repeated basis, and Defendants' violations as alleged herein constitute multiple, separate, and recurring violations as to each Plaintiff and Class Member, rendering the full measure of liquidated damages available under NYLL § 198(1-a) applicable to Defendants' conduct.

151.    Plaintiffs seek all remedies available under NYLL Article 6 and § 198, including unpaid wages, delayed wages, loss of use of wages, lost interest, liquidated damages to the fullest

32

extent available under NYLL § 198(1-a) as amended, prejudgment interest, reasonable attorneys' fees and costs, and all other relief permitted by law.

152.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the Rule 23 Class Members suffered damages, including unpaid wages, delayed wages, loss of use of wages, lost interest, wage underpayments, and other economic harm.

153.    Accordingly, Plaintiffs and the Rule 23 Class Members are entitled, to the fullest extent permitted by law, to recover unpaid wages, damages for wages not paid on the statutorily required payday, lost interest, liquidated damages where available, prejudgment interest, reasonable attorneys' fees and costs, and all other relief available under the NYLL.

**COUNT V - NEW YORK LABOR LAW - WAGE NOTICE AND WAGE STATEMENT VIOLATIONS**
*(On Behalf of Plaintiffs and the Rule 23 Class Against All Defendants)*

154.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

155.    At all relevant times, Plaintiffs and the Rule 23 Class Members were "employees," and Defendants were "employers," within the meaning of NYLL §§ 190(2) and 190(3), and were covered by the notice and statement requirements of NYLL § 195.

156.    The New York Labor Law requires employers to provide employees, at the time of hiring, a written wage notice containing, among other things, the employee's rate or rates of pay, the basis of pay, any allowances claimed as part of the minimum wage, the regular payday, the employer's name and contact information, and other information required by statute. NYLL § 195(1).

157.    The New York Labor Law further requires employers to provide employees, with every payment of wages, an accurate wage statement listing, among other things, the dates of work covered by the payment, rate or rates of pay, gross wages, deductions, allowances, net wages, and,

33

for non-exempt employees, regular hours worked, overtime hours worked, regular hourly rate, and overtime rate. NYLL § 195(3).

158.    Defendants willfully violated NYLL § 195(1) by failing to provide Plaintiffs and the Rule 23 Class Members with accurate wage notices at the time of hiring. Instead, Defendants utilized false or misleading independent contractor agreements, W-9 forms, onboarding paperwork, and payroll records as pretextual devices to evade their statutory obligations and obscure Plaintiffs' true employment status.

159.    Through this scheme, Defendants concealed material wage information required by law, including Plaintiffs' true employee status, applicable rates of pay, basis of pay, regular paydays, overtime rates, tip-credit information, allowances claimed against wages, and the true identity of their joint employers.

160.    Defendants further violated NYLL § 195(3) by failing to provide Plaintiffs and the Rule 23 Class Members with accurate wage statements each payday. To the extent any statements were generated or made available through Zoho or related payroll systems, they were inaccurate, incomplete, stale, or inaccessible.

161.    Those wage statements failed to accurately reflect Plaintiffs' regular rates of pay, overtime rates of pay, actual hours worked, gross wages, deductions, allowances, tip credits claimed, gratuities retained or distributed, net wages, pay periods covered, and the proper employing entities.

162.    Defendants' violations were calculated and systematic. Defendants maintained exclusive control over their payroll, timekeeping, and communication systems, including Zoho and related applications, and weaponized that control to withhold, manipulate, delete, or entirely disable Plaintiffs' access to their own wage and hour records.

163.    Defendants' failure to provide accurate wage notices and wage statements caused Plaintiffs and the Rule 23 Class Members to suffer a concrete, informational injury. This deprivation

facilitated Defendants' wage theft scheme by preventing Plaintiffs from verifying their hours worked, calculating overtime owed, identifying unlawful tip deductions or tip retention, confirming the regular payday, determining whether tip credits or other allowances were being claimed, and identifying the correct corporate entities and individuals responsible for their wages.

164.    Specifically, each individual Plaintiff was unable to detect that he/she was being underpaid for approximately six months because Defendants systematically disabled pay stub access, delaying their wage demands, and causing Plaintiffs to forgo thousands of dollars that would otherwise have been recovered sooner. See *Guthrie v. Rainbow Fencing Inc., 113 F.4th 300 (2d Cir. 2024)* (holding that Article III standing for NYLL § 195 statutory damages requires a concrete injury caused by the failure to provide wage notices or statements); *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-CV-10104, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023).

165.    Defendants' failure to furnish accurate wage notices and wage statements further injured Plaintiffs and the Rule 23 Class Members by impairing their ability to timely detect, challenge, and remedy Defendants' wage violations, including unpaid wages, late-paid wages, unpaid overtime, misappropriated tips, and improper deductions. See *Mateer v. Peloton Interactive, Inc.*, No. 22-CV-740, 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022).

166.    Pursuant to NYLL § 198(1-b), Plaintiffs and the Rule 23 Class Members are entitled to recover statutory damages of $50.00 for each workday that Defendants failed to provide proper wage notices under NYLL § 195(1), up to a maximum of $5,000.00 per Plaintiff and Class Member, together with reasonable attorneys' fees and costs.

167.    Pursuant to NYLL § 198(1-d), Plaintiffs and the Rule 23 Class Members are entitled to recover statutory damages of $250.00 for each workday that Defendants failed to provide accurate wage statements under NYLL § 195(3), up to a maximum of $5,000.00 per Plaintiff and Class Member, together with reasonable attorneys' fees and costs.

168.    Defendants violated NYLL §§ 195(1), 195(3), 198(1-b), and 198(1-d). Therefore, Plaintiffs and the Rule 23 Class Members are entitled to recover statutory damages, reasonable attorneys' fees, costs, and all other relief available under the NYLL.

**COUNT VI - FAIR LABOR STANDARDS ACT AND NEW YORK LABOR LAW - UNLAWFUL RETALIATION**
***(On Behalf of Plaintiffs and the FLSA Collective Plaintiffs as to the FLSA retaliation claim, and Plaintiffs and the Rule 23 Retaliation Subclass as to the NYLL retaliation claim, Against All Defendants.)***

169.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

170.    The Fair Labor Standards Act makes it unlawful for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3).

171.    An employee's internal oral or written complaint to an employer may constitute protected activity under the FLSA where the complaint is sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the FLSA and a call for their protection. See *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011); *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 114–16 (2d Cir. 2015).

172.    Similarly, the New York Labor Law prohibits an employer, its agent, or any other person from discharging, threatening, penalizing, discriminating against, or retaliating against an employee because the employee made a complaint to the employer or any other person that the employer engaged in conduct the employee reasonably and in good faith believed violated the Labor Law. NYLL § 215(1)(a).

173.    Plaintiffs and similarly situated employees engaged in statutorily protected activity by making good-faith, explicit complaints to Defendants regarding Defendants' wage violations,

including unpaid wages, delayed wages, illegal tip misappropriation, misclassification, failure to pay overtime, and failure to pay timely wages.

174. By way of example, Plaintiff Tabibzada engaged in protected activity by demanding his earned wages no fewer than twenty-five (25) times and directly confronting the Chief Executive Officer alongside a similarly situated coworker regarding withheld pay. Plaintiff Canizales likewise engaged in protected activity by submitting explicit written demands via text message, including screenshots documenting the exact wages owed and setting a deadline for payment.

175. Defendants possessed actual knowledge of these protected complaints because the complaints were made directly to Defendants' management, executives, owners, and/or agents.

176. After Plaintiffs engaged in protected activity, Defendants subjected them to materially adverse actions, including reducing or eliminating scheduled shifts, locking them out of Zoho payroll and CRM applications, deleting historical wage-related communications, blocking their email addresses, refusing to answer their phone calls, and terminating their employment.

177. Defendants' stated reasons for these adverse actions were false and pretextual. For example, when Plaintiff Canizales was locked out of the company platform immediately after sending his wage demand, Defendant Arellano claimed it was due to "app maintenance." When Plaintiff Tabibzada was removed from the schedule, Defendants gave shifting and mutually inconsistent justifications at different times, alternately claiming that he "did not fit the culture" and that they "wanted a woman" for the role — explanations that cannot both be true and that, considered together with their timing, demonstrate they were pretextual cover for retaliation rather than legitimate, good-faith business reasons.

178. Defendants' retaliatory intent and the causal connection between Plaintiffs' protected complaints and Defendants' adverse actions are supported by the extreme temporal proximity and Defendants' shifting, pretextual explanations. See *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847

(2d Cir. 2013) (holding that temporal proximity, coupled with inconsistent or shifting explanations, may support an inference of retaliatory pretext); see also *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding that materially adverse actions include those that might dissuade a reasonable worker from making or supporting a charge).

179.    Defendants used retaliatory lockouts, deletion of communications, removal from schedules, and terminations to deter Plaintiffs and similarly situated employees from asserting their rights to lawful wages and tips.

180.    As a direct and proximate result of Defendants' unlawful retaliation, Plaintiffs suffered financial harm, lost wages, lost employment opportunities, emotional distress, and other damages.

181.    Accordingly, Plaintiffs are entitled, to the fullest extent permitted by law, to recover back pay, front pay, liquidated damages, compensatory damages, emotional distress damages, punitive damages where available, statutory penalties to the extent recoverable in a private civil action under NYLL § 215, pre-judgment interest, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the FLSA Collective Plaintiffs, the Rule 23 Class Members, and the Rule 23 Retaliation Subclass, respectfully request that this Court enter judgment in their favor and against Defendants, jointly and severally, granting the following relief:

**A. Certification and Notice**
-Designation of this action as a collective action under the FLSA, 29 U.S.C. § 216(b), on behalf of the FLSA Collective Plaintiffs;
-Issuance of prompt, Court-authorized notice to all similarly situated employees advising them of their right to opt into this action;
-Certification of this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the Rule 23 Class and the Rule 23 Retaliation Subclass;
-Appointment of Plaintiffs as Class Representatives;
-Appointment of Plaintiffs' counsel as Class Counsel;

**B. Declaratory and Injunctive Relief**

-A declaratory judgment that Defendants operated as joint employers and/or a single integrated enterprise and are jointly and severally liable for the violations alleged herein;

-A declaratory judgment that Defendants' enterprise-wide policy of misclassifying Plaintiffs and Class Members as independent contractors was unlawful and willful;

-A declaratory judgment that Defendants' practices violated the minimum wage, overtime, tip-retention, and anti-retaliation provisions of the Fair Labor Standards Act;

-A declaratory judgment that Defendants' practices violated the minimum wage, overtime, spread-of-hours, tip misappropriation, timely payment, wage notice, wage statement, and anti-retaliation provisions of the New York Labor Law;

-A declaratory judgment that Defendants' violations of the FLSA and NYLL were willful, intentional, and devoid of any good-faith basis;

-An injunction prohibiting Defendants from continuing the unlawful wage, tip, misclassification, payroll, recordkeeping, and retaliation practices alleged herein;

**C. Wage, Tip, and Liquidated Damages**

-An award of all unpaid minimum wages, overtime compensation, spread-of-hours pay, and other unpaid wages owed to Plaintiffs, the FLSA Collective Plaintiffs, and the Rule 23 Class Members under the FLSA and NYLL;

-An award of all misappropriated, unlawfully retained, and/or unlawfully distributed tips and gratuities owed to Plaintiffs and the Rule 23 Class Members;

-An award of damages for wages not paid on the statutorily required payday, to the fullest extent available under NYLL §§ 191 and 198;

-An award of liquidated damages in an amount equal to one hundred percent (100%) of all unpaid wages and misappropriated tips, and liquidated damages, statutory damages, or other available relief for late-paid wages to the fullest extent permitted under NYLL §§ 191 and 198;

**D. Statutory Damages**

-An award of statutory damages in the amount of $50.00 per workday, up to a maximum of $5,000.00 per Plaintiff and Class Member, for Defendants' failure to provide accurate wage notices under NYLL § 195(1);

-An award of statutory damages in the amount of $250.00 per workday, up to a maximum of $5,000.00 per Plaintiff and Class Member, for Defendants' failure to provide accurate wage statements under NYLL § 195(3);

**E. Retaliation Damages**

-An award of full back pay, front pay, lost employment benefits, and other lost compensation for Plaintiffs and the Retaliation Subclass resulting from Defendants' retaliatory adverse actions and terminations;

-An award of compensatory damages, including emotional distress damages, for Plaintiffs and the Retaliation Subclass;

-An award of punitive damages where legally available, including for Defendants' retaliatory conduct;

-An award of statutory penalties and civil penalties to the extent recoverable in a private civil action under NYLL § 215;

**F. Interest, Fees, Costs, and General Relief**

-An award of pre-judgment and post-judgment interest at the highest rates allowed by law;

-An award of reasonable attorneys' fees, costs, and expenses of this action pursuant to 29 U.S.C. § 216(b), NYLL §§ 198 and 215, and all other applicable law; and

-Such other, further, and different legal, equitable, and remedial relief as this Court may deem just, proper, and equitable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  Huntington, NY
        June 30, 2026

**TA LEGAL GROUP PLLC**
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs, and Class Members*

By:  _____
     Taimur Alamgir, Esq.
     Matthew J. Daidola, Esq.
     205 East Main Street, Suite 3-2
     Huntington, NY 11743
     (914) 552-2669
     (631) 942-7399
     tim@talegalgroup.com
     matthew@talegalgroup.com